UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | |
| ) | |
| v. ) | Nos: 2:08-CR-98(02) |
| ) | 2:12-CV-124 |
| JOSE A. MANDUJANO HERNANDEZ, ) | |
| Petitioner. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the *pro se* motion of Jose A. Mandujano Hernandez ("petitioner" or "Hernandez") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, [Doc. 183].[1] The United States has responded in opposition, [Doc. 193], and the petitioner has replied, [Doc. 196]. The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, petitioner's § 2255 motion lacks merit and will be DENIED.

**I. Procedural and Factual Background**

This criminal case against Hernandez was initiated by the filing of a criminal complaint on October 10, 2008, [Doc.1]. The complaint accused Hernandez and four co-defendants, Antonio Romero,[2] Elias C. Lopez, Emigdio Rodriguez, and Cecilia R. Heatherly of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine HCL in violation of 21 U.S.C. §§ 846 and 841(a)(1). On October 14, 2008, the federal grand jury returned a two count indictment charging all five defendants in Count 1 with the same offense charged in the

---

[1] All docket entry references are to case No. 2:08-CR-98.
[2] This defendant's name was corrected to Antonio Romero Chavez in the subsequent indictment returned by the grand jury.

1

criminal complaint. Hernandez, Lopez and Rodriguez were charged in Count 2 with possession with intent to distribute 500 grams or more of cocaine HCL.[3] The indictment also contained certain forfeiture allegations. [Doc. 26]. On December 9, 2008, a superseding indictment, [Doc. 87], was returned by the grand jury. Count 1 charged Hernandez and his co-defendants with a conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine HCL,[4] Count 2 remained the same, and a new Count 3 contained a charge against co-defendant Rodriguez. After extensive motion practice, Heatherly, Rodriguez and Chavez all entered into plea agreements with the United States, [Doc. 94, 98 and 106].

     Hernandez and Lopez, however, proceeded to a jury trial on March 17, 2009. On March 19, 2009, the jury found Lopez not guilty but convicted Hernandez of a lesser included offense in Count 1, that is, a conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine HCL and Count 2 of the superseding indictment, [Doc. 124]. A presentence investigation report ("PSR") was ordered and disclosed to the parties on July 13, 2009. In the PSR, the probation officer calculated a total offense level of 32 and a criminal history category of I resulting in a guideline range for imprisonment of 121 to 151 months. After petitioner's objections to the PSR were overruled, the Court adopted the PSR as its findings and applied an advisory guidelines range of 121 to 151 months of imprisonment. At sentencing on August 10, 2009, the Court varied downward and imposed a sentence of 96 months of imprisonment. [Doc. 168 at 18-32]. Judgment was entered on August 24, 2009, [Doc. 166]. Petitioner then filed a timely notice of appeal and the Sixth Circuit affirmed his convictions and sentence on August 22, 2011, [Doc. 179]. Petitioner thereafter timely filed the instant § 2255 motion.

     The following summary of the evidence presented at trial was set out in the PSR and

---

[3] This offense carried a mandatory minimum term of five years imprisonment up to a maximum term of 40 years.
[4] This offense carried a statutory mandatory minimum sentence of ten years up to a maximum term of life imprisonment.

adopted by the Court:

> . . . On October 9, 2008, Washington County Deputy Will Rhodes conducted a traffic stop on a vehicle traveling on Highway 11E on a suspicion of a possible charge of Driving Under the Influence. Antonio Chavez was the driver of the vehicle and Cecilia Heatherly was the passenger. Antonio Chavez reported to the officer that he was on his way to a storage facility located on Highway 11E. He was subsequently placed under arrest for Driving Under the Influence. A K-9 officer was used to conduct a free-air sniff around the vehicle, and alerted on the vehicle. Upon searching the vehicle, officers located approximately $20,000 in cash wrapped in cellophane bundles.
>
> After Antonio Chavez was arrested and transported to jail, Drug Enforcement Administration Task Force Agent Vince Walters drove past the Ideal Storage Facility located on Highway 11E in Limestone, Tennessee, to check on possible activity. A black Suburban was seen parking in front of unit number 143. Co-defendant Emigdio Rodriguez was driving, and the defendant and co-defendant Elias Lopez were passengers. As the Suburban exited, Agent Walters asked Rodriguez to speak to him. Rodriguez agreed, pulled the vehicle through the gate, and stopped the vehicle. Investigation revealed that the vehicle was registered to Rodriguez. Rodriguez reported that co-defendant Heatherly called him and told him that Chavez was in trouble and in jail. Rodriguez drove the defendant and Lopez to the storage unit. The defendant and Lopez loaded boxes from the unit into the vehicle. Rodriguez stated he did not know what was in the vehicle, and gave consent to search. A search of the vehicle revealed one kilogram of cocaine and approximately $69,190 in cash wrapped in cellophane. Within the cellophane wrapping were receipts for money transfers from the defendant and co-defendants Chavez, Heatherly, and Lopez, to persons in Mexico. Additionally, Agents recovered the pass code and key to the storage unit from the defendant.
>
> On the same date, a search warrant was executed at 488 Washington College Road, Limestone Tennessee, the residence of Jose Hernandez and Elias Lopez. During the search, a K-9 alerted a section of the wall in the living room area of the trailer. Concealed within the wall, agents located $8,909 in United States currency.
>
> Cecilia Heatherly testified that defendant Hernandez (Angel) delivered cocaine for Antonio Chavez, and returned with cash. She indicated she had rented the storage unit in her name, and had

3

> given one set of keys to Antonio Chavez, and one set to Angel. She indicated the defendant had the other set of keys so Chavez would be able to have defendant Hernandez pick up cocaine in the storage unit if needed.

[PSR ¶¶ 8, 9, 10, and 11].

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255.  Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).  To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994).  *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)

4

(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

5

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## IV. Analysis

Hernandez makes a general claim of ineffective assistance of counsel with two subparts, which he states as follows:

> Whether petitioner's counsel was constitutionally ineffective for failure to argue during the sentencing that he should be given a downward departure pursuant to his minor participant role in the instant offense.
>
> Whether petitioner received ineffective assistance of counsel based on his failure to explain to petitioner the difference between going to trial and pleading guilty and specifically his failure to discuss with him how the Federal Sentencing Guidelines works, how the safety valve provision might effect his sentence and that he could have received a three points reduction for acceptance of responsibility if he pleads guilty.

[Doc. 183 at 2]. The Court will address each of the issues raised in turn, beginning with the claim related to the minor participant role.

### A. Minor Participant Role

Section 3B1.2 of the United States Sentencing Guidelines provides for a four level decrease in the offense level if defendant was a minimal participant, a two level reduction in the offense level if the defendant was a minor participant, and a three level decrease in cases falling between the two. USSG § 3B1.2. Petitioner faults counsel for failing to argue for a minor role adjustment. This claim, however, is clearly contradicted by the record.

The probation officer who prepared the PSR did not apply a minor role adjustment. Counsel for petitioner, however, filed a sentencing memorandum on petitioner's behalf on July 31, 2009, in which he raised an objection that the PSR did not include a mitigating role adjustment. [*See* Doc. 159]. At the sentencing hearing on August 10, 2009, counsel argued that Hernandez's role, compared to that of co-defendant Romero, was a "relatively insignificant role in the offense." [Doc. 168 at 13]. Counsel pointed out to the Court that drug ledgers seized

7

at the residence of Romero and Heatherly indicated "something like five, six hundred thousand dollars passing through their hands" while Hernandez was living in "substandard" housing. [*Id*. at 14]. After hearing argument, the Court overruled the objection, finding that Hernandez was held responsible in the guidelines calculation only for the amount of drugs he was personally responsible for, that he acted as a courier for Chavez, that he delivered cocaine, and that he picked up proceeds from the sale of cocaine. [*Id*. at 15].

Petitioner's claim fails for two reasons. First, his claim that counsel rendered ineffective assistance of counsel by failing to argue for a minor role adjustment is factually incorrect. Second, Hernandez points to no new evidence or any not already heard by the Court to suggest that the Court's ruling on the objection was erroneous. Petitioner does make the somewhat strained argument that he could have received a minor role adjustment if he had pled guilty based upon proper advice by counsel; however, a guilty plea in the case would not have changed his lack of eligibility for a minor participant role in the offense. This claim lacks merit.

### B. Failure to Properly Advise Petitioner of Pros and Cons of Pleading Guilty Instead of Taking the Case to Trial

Hernandez claims he was denied effective assistance of counsel "based on counsel's failure to advise him of the Sentencing ramifications of pleading guilty as opposed to going to trial." [Doc. 183 at 5]. Petitioner claims he "wanted to plead guilty based on his understanding" from counsel's paralegal that his sentencing exposure "should" be 41-51 months if he pleaded guilty.[5] [*Id*. at 5-6]. However, counsel apparently advised Hernandez that he would "need to give others up" before the government would "accept his guilty plea." [*Id*.]. Because he did not "know anybody to give up," petitioner argues he "was basically forced to go

---

[5] According to Hernandez, counsel's paralegal advised him at a pretrial meeting "that he should be receiving the following points reductions if he pleads guilty (1) Two points for a Minor participant; (2) Two points for Safety Valve and (3) Three points for acceptance of responsibility," resulting in a "Sentence exposure [of] 41-51 months." [Doc. 183 at 5-6].

8

to trial, which was contrary to his intention." [*Id*.]. Petitioner argues that counsel "never recommended to him that he should plead guilty or informed him that there were benefits to pleading guilty." [*Id*. at 6-7]. These benefits, he claims, include safety valve, minor role, and acceptance of responsibility reductions in his guideline range. [*Id*. at 7]. Had he known of these benefits, Hernandez claims he would have pled guilty "to the entire indictment without having to give any body up,"[6] as would have been necessary for a plea agreement with the government. If he had done so, he claims there is "a reasonable probability that he would have received a lesser sentence." [*Id*. at 9]. He specifically argues that he would have received "a Sentencing range of 41-51 months" or "a Sentence less than the 96 months he received at trial." [*Id*. at 10].

Petitioner's argument is flawed for several reasons. First and foremost, Hernandez overlooks the fact that he was convicted at trial of the lesser included offense charged in Count 1, *i.e.* a conspiracy to distribute and possess with intent to distribute **500 grams or more** of cocaine HCL, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). He was charged in Count 1, however with the same conspiracy involving **five kilograms or more** of cocaine HCL, the charge he would have been required to plead to if he had pled to the indictment without a plea agreement. The greater charge in Count 1 of the superseding indictment subjected petitioner to a mandatory minimum sentence of ten years, 120 months.[7] Therefore, absent safety valve eligibility, which is lacking, as described below, Hernandez could not have received a sentence of less than 120 months, 24-months longer than he actually received, by pleading guilty to the superseding indictment. Even if counsel was somehow ineffective, petitioner can show

---

[6] Hernandez, of course testified at trial and maintained his innocence throughout. He conveniently ignores the fact that this Court would not have accepted his guilty plea in the face of such claims of innocence.

[7] Hernandez states, in his reply, that the Court found at petitioner's sentencing that his guidelines range would have been 70-80 months. [Doc. 196 at 2]. Petitioner, however, misunderstands the Court's statement. The Court's statement was clearly in reference to a five level reduction in offense level received by Chavez for acceptance of responsibility and safety valve and assumed that Hernandez had entered into a plea agreement with the government to the lesser included offense of which he was ultimately convicted. [*See* Doc. 168 at 22-23].

9

absolutely no probability, or even a possibility, that he would have received a lower sentence if he had pled guilty to the superseding indictment.

Furthermore, petitioner's claim that he would have pleaded guilty to the indictment is not credible and is seriously undermined by his professions of innocence at trial.[8] As noted in the PSR, Hernandez testified at trial that he did not know anything about a conspiracy to distribute drugs and was not part of such a conspiracy. He testified that he did not know anything was in the walls of his residence and stated he never saw drugs in the residence. He claimed not to be aware of the contents of the storage unit nor the boxes loaded into the vehicle by him on October 9. He denied Cecilia Heatherly's testimony that he had distributed drugs and that he had anything to do with the money receipts within the cellophane wrapped money bundles which contained his name indicating money had been transferred to Mexico. He clearly has not disavowed that testimony at this point and still maintains that he was just a "handy man."

Finally, petitioner's claim of safety valve eligibility is also without merit. Section 3553(f) allows a defendant subject to a statutory mandatory minimum to be sentenced without regard to the statutory minimum if several criteria are met: (1) The defendant has no more than one criminal history point under the sentencing guidelines; (2) the defendant did not use violence or threats of violence and did not possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant did not have a leadership role in the offense under the sentencing guidelines; and (5) the defendant truthfully provided to the government all information he possessed concerning the offense. 18 U.S.C. § 3553(f).

---

[8] It should be noted that petitioner's testimony at trial resulted in a two-level enhancement of his offense level for obstruction of justice based on perjured testimony.

10

Case 2:08-cr-00098-JRG   Document 197   Filed 12/22/14   Page 10 of 13   PageID #: 1688

These safety valve provisions not only require a defendant to admit the conduct charged, but also impose an affirmative obligation on the defendant to "volunteer any information aside from the conduct comprising the elements of the offense." *United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) (quoting *United States v. Arrington*, 73 F.3d 144, 149 (7th Cir. 1996)). A defendant is required to disclose "a broader scope of information about the relevant criminal conduct to the authorities." *Id.* at 675 (quoting *United States v. Sabir*, 117 F.3d 750, 753 (3d Cir. 1997)). The information which must be disclosed by a defendant seeking safety valve treatment includes not only his own conduct but also "conduct that he aided or abetted." USSG § 5C1.2 comment. n.4. The safety valve "was intended to benefit only those defendants who truly cooperate." *Id.* (quoting *United States v. Marin*, 144 F.3d 1085, 1094 (7th Cir. 1998)).

Hernandez claims he could have gotten a safety valve reduction without "giv[ing] any body up." Even if that is an accurate statement of the law, which it does not appear to be, Hernandez has not shown that he would have disclosed **_all_** information he had about his own conduct.[9] As noted above, he maintained his innocence throughout the trial, denying under oath his involvement in *any* drug conspiracy, much less one to distribute five kilograms or more of cocaine. He denied any agreement to distribute drugs or even that he knew anything about drugs. He claimed that he was not aware of the drugs in the storage unit or in the wall of the trailer he shared with Lopez. Even now, he appears to deny involvement in any conspiracy, describing his entire role as that of "a handy man, loading the truck." Although he admits that money transfer receipts in his name were found inside the cellophane wrapping enclosing the $69,190 in cash found in the vehicle in which he was a passenger on the day of his arrest, he

---

[9] The Court assumes that Hernandez could establish all the other prerequisites to safety valve treatment and that only the fifth requirement is at issue here.

11

maintained that he knew nothing about the receipts. Hernandez has not shown that he would have provided all information he had concerning the offense to the government.

**V.      Conclusion**

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Id.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal of her claims was debatable or wrong. Therefore, the Court will DENY a certificate of appealibility.

A separate judgment will enter.

ENTER:

                                                            s/J. RONNIE GREER
                                          UNITED STATES DISTRICT JUDGE